IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SABAR LAL**, *et al.*, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| *v.* | ) Civil Action No. 06-CV-1763 (CKK) |
| | ) |
| **GEORGE W. BUSH**, *et al.*, | ) |
| | ) |
| *Respondents*. | ) |

**OPPOSITION TO RESPONDENTS' MOTION TO DISMISS,
MOTION FOR A STAY-AND-ABEY ORDER, AND NOTICE OF INTENT TO FILE
PETITION UNDER THE DETAINEE TREATMENT ACT**

**INTRODUCTION**

Petitioner, through counsel, opposes the government's Motion to Dismiss because controlling Circuit and Supreme Court authority require the Court to stay and hold in abeyance these District Court proceedings pending Petitioner's exhaustion of remedies under Section 1005(e) of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA").

This Court has subject-matter jurisdiction over this habeas corpus petition under the Supreme Court case upon which the government's Motion is primarily based, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), which holds that dismissal for lack of subject-matter jurisdiction is proper only when the federal claim is frivolous or foreclosed by prior decisions of the Supreme Court. The Circuit Court's split decision in *Boumediene v. Bush*, and the split commentary from Supreme Court Justices on the denial of certiorari in that case, establish that the issues involved are substantial and that the Supreme Court has *not* decided the important questions that were deferred pending exhaustion of available remedies. 476 F.3d 981 (D.C. Cir.), *cert. denied*, 127 S. Ct. 1478 (2007).

The Supreme Court has provided a clear road map for the litigation involving Guantánamo detainees who filed habeas corpus petitions under *Rasul v. Bush*, 542 U.S. 466 (2004). While available remedies are exhausted, the District Court has authority to enter a stay-and-abey order[1] to safeguard habeas rights during the period of exhaustion, and such an order is mandatory in the absence of frivolous claims and intentional delay. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). While the merits are stayed pending exhaustion and during post-exhaustion litigation, this Court has the authority to maintain any supervisory orders this Court has entered (including, for example, any such order regarding access to counsel). *United States v. United*

---

[1] Undersigned counsel have consulted with counsel for Respondents, who oppose the motion for a stay-and-abey order.

*Mine Workers of America*, 330 U.S. 258, 290-91 (1947); *In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964).

Permitting Petitioner to present his post-exhaustion facts and claims to this Court is logical, fair, and compelled by governing Supreme Court authority. Petitioner has made substantial arguments that his particular claims are viable and that, if necessary, he should be able to make a record for potential appellate and Supreme Court review. The motion to dismiss should be denied.

A.  **This Court Retains Subject-Matter Jurisdiction over the Habeas Corpus Petition as Long as the Petitioner's Claims Are Not Frivolous and Have Not Been Decided on the Merits by the Supreme Court.**

The government places primary reliance on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question (Motion at 4). The government ignores the preceding language in *Steel Co.*, language that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that a District Court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). As demonstrated by the dissenting opinions in the Court of Appeals and on the denial of certiorari in *Boumediene*, there is substantial support for a reading of the Constitution and laws of the United States that

2

would sustain the instant habeas corpus petition. 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S. Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

The *Steel Co.* opinion also establishes that a Court of Appeals opinion, such as *Boumediene*, is not sufficient to deprive the Court of subject-matter jurisdiction. Only when the Supreme Court rules adversely on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)) (emphasis added). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits. *See Boumediene*, 127 S. Ct. at 1479 (Stevens & Kennedy, JJ., statement regarding denial of certiorari).

The jurisdictional issues are obviously not frivolous because the courts have been split on the legal and constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this country faced weightier issues about the meaning of our Constitution and the fundamental right to the writ of habeas corpus. The primary case upon which the government relies establishes that the motion to dismiss should be denied while remedies are exhausted.

Ironically, the government's own motion recognizes this Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed. In footnote 15, the government points out that the existing Protective Order should survive dismissal, citing to a case upon which the petitioner relies – *United Mine Workers* (Motion at 8-9 n.15). As argued *infra* at 11-12, *United*

3

*Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised," as Justices Stevens and Kennedy put it in *Boumediene*.[2]

This Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*; then, if the case is not mooted by the DTA proceedings, it should provide the petitioner the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

The government's position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair Petitioner's rights to exhaust his remedies while this Court preserves the status quo.[3] If

---

[2]   The government's position regarding selective survival of the protective order's provisions is untenable. If this Court were to dismiss, the protective order would continue in full effect until the protective order itself, or individual provisions, were dissolved by separate order of this Court. *See infra* Section E.

[3]   The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

4

necessary, after exhaustion, this Court, the Circuit Court, and the Supreme Court have jurisdiction to determine the substantial issues raised by the petitioner without prejudgment based on a Circuit Court ruling that does not address Petitioner's specific factual and legal claims.

B.  **The *Boumediene* Case Establishes That the Present Case Involves Substantial Issues That Have Not Been Decided by the Supreme Court and That the Exhaustion of Available Remedies Should Precede a Decision on the Merits.**

The government attempts to stretch the Circuit Court's *Boumediene* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a split panel of this Court found that post-*Rasul* statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Only because the petitioners in those cases had declined to seek review directly with the Court of Appeals under § 1005(e) of the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a two-Justice statement respecting the denial of certiorari. *Boumediene v. Bush*, 127 S. Ct. 1478 (2007).

The statement of Justices Stevens and Kennedy found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." 127 S Ct. at 1479. The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of

5

habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The government's reliance on *Boumediene* is misplaced for several reasons. First, the Circuit Court's reference to the *Boumediene* petitioners' decision not to exhaust, coupled with Justices Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while the DTA remedy is exhausted. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S. Ct. at 1479 (Stevens & Kennedy, JJ., statement regarding denial of certiorari) (citing *Rasul*, 542 U.S. at 480-81). Third, Justices Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

  1. *Justices Stevens and Kennedy Explicitly (and the Circuit Court Implicitly) Adopted the Exhaustion of Remedies Model for Habeas Relief*

*Boumediene* does not control this case because, unlike the petitioners in that case, Petitioner here intends to exhaust his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*. *Boumediene*, 127 S. Ct. at 1479.

The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . . But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court. The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

> 2. *The Supreme Court Has Not Decided Any Questions Regarding the Jurisdiction of This Court or the Rights That Can Be Enforced Through Habeas Corpus Proceedings*

The government's claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S. Ct. at 1479. Three dissenting Justices and Circuit Judge Rogers in dissent explained that the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. *Boumediene*, 476 F.3d at 994-1012; 127 S. Ct. at 1479-81. The addition of Justices Stevens and Kennedy's statement confirms

7

that the instant petition should be fully considered after exhaustion, and then in light of the specific claims for relief Petitioner makes upon his unique facts in the DTA proceedings, and whether those proceedings prove capable of providing the relief he claims on his facts. The *Boumediene* case does not finally resolve the jurisdictional questions in this case.[4]

        3.    *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved until the Adequacy of the DTA Remedy Becomes Known*

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."). The *Boumediene* statement on certiorari clearly sets out, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits of the habeas corpus claims. *Boumediene*, 127 S. Ct. at 1479 (statement of Stevens and Kennedy, JJ.). Further, the Court stated that, in the interim, the government should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. By maintaining the present case in the District Court, this Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id*. In sum, the exhaustion model from the *Boumediene* litigation requires that this District Court proceeding remain in place for potential post-exhaustion litigation.

---

[4]     The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

C.    **Because Petitioner Is Exhausting Available Remedies, The District Court Not Only Has Discretion to Enter a Stay-and-Abey Order, But Such An Order Is Mandatory Under *Rhines***

Given the need to exhaust remedies under the DTA, the District Court proceedings should continue to be stayed and held in abeyance pending completion of Petitioner's DTA review. In *Rhines*, the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. 544 U.S. at 278. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system and unexhausted claims. Given the major procedural risks entailed by a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. "[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss" if the petitioner demonstrated (1) good cause for the failure to exhaust, (2) potentially meritorious unexhausted claims, and (3) no intentionally dilatory tactics by the petitioner. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).[5] The petition here easily meets all three conditions for entry of a mandatory stay-and-abey order.

There is good cause for the failure to exhaust until now: the potential remedy under the DTA did not on its face appear to provide the relief available under common-law or statutory habeas. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantánamo detainees face complexities that are similar

9

and worse. The questions left open by the Supreme Court's decision in *Rasul*, and the subsequent DTA and Military Commission Act of 2006, have resulted in major complications. The claims raised by the instant petition are substantial and meritorious, and Petitioner has not engaged in dilatory tactics. In the event the case is remanded, or if the procedures for review set forth in § 1005(e) of the DTA prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the habeas petition.

The government's attempt to distinguish *Rhines* fails because the government attempts to interpret *Rhines* to mean less than it actually says. The government contends that the power of the district court to stay-and-abey under *Rhines* is limited only to those instances when failing to stay-and-abey would cause a statute of limitations to run that would preclude the petitioner from refiling (Mot. at 6-7). This was the factual predicate in *Rhines*, not its holding. Nothing in *Rhines* limited the District Court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the District Court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting the stay-and-abey approach was to protect the petitioner from impairment of his ability to exercise his habeas corpus rights in the future. *Cf. Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) (affirming the District Court's preliminary injunction barring transfer of a prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq).

The exhaustion required by *Hawk* operates as does the exhaustion required by the statute in *Rhines*. Further, the same type of procedural obstacles that dismissal would create under 28

---

[5] In *Rhines*, three Justices concurred, stating that stay-and-abey is required *in the absence of proof of* "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring,

U.S.C. § 2254 confront detainees in Guantánamo cut off from contact with their lawyers and facing retroactivity questions regarding statutes that purport to impair the jurisdiction that unquestionably existed at the time the habeas corpus petition was filed.  *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

D.      **Under *United Mine Workers*, the Court Has Authority to Preserve the Status Quo While Jurisdictional Questions Are Litigated.**

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. at 1479.  The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while the matter is under consideration, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition."  *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)).  The Circuit Court of the District of Columbia has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ."  Clearly there was "power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d at 1005 (internal citations omitted) (quoting *Shipp* and *United Mine Workers*).  This Court should carefully protect the status quo by maintaining the existing protective order in order to assure the petitioner is not

---

joined by Justices Ginsburg and Breyer).

11

prejudiced in his ability to litigate the DTA action and to preserve potential remedies in this Court and on appeal.

The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding issues in this case including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Are the MCA and the DTA inapplicable given Petitioner's jurisdictional arguments regarding the absence of initial military jurisdiction, which would foreclose the CSRT from constituting a competent tribunal to render any decision? Is the government taking "additional steps to prejudice the position of Petitioner in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised?"

Respondents' motion to dismiss should be denied because this Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to Petitioner, there must be an adequate record for the Circuit Court's appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petition in this Court remain in place until after the petitioner has exhausted the DTA procedures. During that process, the government should be foreclosed from prejudicing Petitioner's ability to litigate these questions—at both the District Court and Circuit Court level.

### E.     Maintenance of the Protective Order Is Necessary to Assure That "The Office and Purpose of the Writ of Habeas Corpus Are Not Compromised."

The dismissal of the District Court proceedings would constitute exactly the type of prejudice to the petitioner's ability to litigate that Justices Kennedy and Stevens instructed that

the courts should guard against. This Court properly addressed issues preliminary to ultimate disposition throughout this litigation. This Court's order on access to counsel should remain intact pending exhaustion of DTA remedies.

The government has complained that the protective order it agreed to is onerous, and now suggests it should be renegotiated and replaced in the Court of Appeals. (Motion at 9-11). This Court has been supervising the protective order for almost two years. If difficulties arose beyond the powers of the parties to resolve, the protective order included powerful mechanisms for the government to exhaust, up to and including contempt and criminal prosecution. The government's failure to exhaust their available remedies should foreclose action based on the government's complaints. The government's desire to substitute protective orders is no reason to dismiss this action instead of following the Supreme Court-approved stay-and-abey procedure.

The government argues that the stay-and-abey relief requested here "contemplates that various orders of the Court, including the protective order imposing a counsel access regime and any orders requiring advance notice of any transfer of detainees from Guantanamo, would remain extant and enforceable, effectively imposing Court-ordered obligations where the Court has no jurisdiction to act." (Motion at 7-8 (footnotes omitted).) The government disputes that possibility, contending that, as a result of the District of Columbia Circuit's decision in *Boumediene*, this Court must promptly dismiss these cases and that "prompt dismissal of these cases … would bring this Court's counsel access regime to an end." *Id*. at 10.

Contrary to the government's contention, dismissal of this case would not result automatically in the dissolution of the protective order entered by the Court. As the Court recognized in *Adem v. Bush*, 425 F. Supp. 2d 7, 20 (D.D.C. 2006), the "Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in

13

Guantanamo Bay, Cuba,"[6] first entered in 2004 and like all protective orders directed to future events, survives dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group*, 858 F.2d 775, 780-82 (1st Cir. 1988); *Marshall v. Planz*, 347 F. Supp. 2d, 1198, 1201 (M.D. Ala. 2004); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D. Md. 2000). Indeed, this Court expressly "retain[ed] continuing jurisdiction to enforce or modify the terms of [the Amended Protective] Order."[7]

Similarly, injunctive decrees directed to future events (including the protective order to the extent it requires preservation of government records and counsel papers, for example), survive dismissal of a case and may be modified, enforced, or dissolved only by separate order of the Court. *See United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004); *Gilmore v. People of the State of California*, 220 F. 3d 987, 1007 (9th Cir. 2000); *Dahlen v. Kramer Machine & Engineering Products Co.*, 303 F.2d 293, 295 (10th Cir. 1961); *State Police for Automatic Retirement v. Difava*, 164 F. Supp. 2d 141, 156 (D. Mass. 2001); *EEOC v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 855 F. Supp. 488, 491-92 (S.D.N.Y. 1994).

Although the government is aware of at least some of these precedents, it mistakenly interprets them to mean that only "certain requirements of this Court's Protective Order, *i.e.*, requirements pertaining to the handling of classified and 'protected' information appropriately, retain vitality beyond the required dismissal of these cases." (Motion at 8-9 n.15.) In other

---

[6]  *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004).
[7]  344 F. Supp. 2d at 176.

words, the government contends that only those portions of the Court's protective order that it likes, because they constrain the detainees' counsel, survive dismissal, but those portions it does not like, because they constrain the government, do not. The government cites no authority, and Petitioner is aware of none, that supports such cherry-picking by the government. *Cf. SRS Technologies, Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting plaintiff's assertion that, under protective order in effect after settlement of underlying lawsuit, plaintiff "should now be allowed virtually unrestricted access to and use of confidential documents produced by the Defendants, but that the protective order should remain in full force to protect Plaintiff's documents"). The cases cited above show that the protective order entered by the Court survives dismissal in its entirety, unless and until modified or dissolved by separate order of the Court.

Moreover, equitable principles dictate that the Court may not dissolve the protective order entered in this case without first holding an evidentiary hearing at which the government and Petitioner are heard. *See Hodge v. Dep't of Housing and Urban Development,* 862 F.2d 859, 861 (11th Cir. 1989). The government would bear the burden of why the order, or portions thereof, should be dissolved. *See SRS Technologies Inc.*, 216 F.R.D. at 529-31; *Lee Shuknecht & Sons v. P. Vigneri & Sons, Inc*., 927 F. Supp. 610, 614-616 (W.D.N.Y. 1996); *Grundberg v. Upjohn Co.*, 140 F.R.D. 459 (D. Utah 1991); *SEC v. Samuel H. Sloan & Co.*, Nos. 71 Civ. 2695 (RJW), 74 Civ. 5729 (RJW), 1991 WL 173730 (S.D.N.Y. Aug. 29, 1991). This is so even where, as here, intervening legislation has affected the Court's jurisdiction. *See Miller v. French*, 530 U.S. 327, 345-348 (2000). The government has not moved to dissolve, and the Court has not held an evidentiary hearing on this issue. Therefore, to the extent the government seeks by its motion to dismiss to dissolve the protective order, the motion should be denied as

premature.

Access between Petitioner and counsel is critical in this case, and keeping the protective order intact is necessary to assure that "the office and purposes of the writ of habeas corpus are not compromised." *Boumediene*, 127 S. Ct. at 1479 (Stevens & Kennedy, JJ.). Leaving the protective order intact provides the Court of Appeals the option of continuing to administer the DTA litigation under the auspices of this Court's orders.

## CONCLUSION

Petitioner's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits, and Petitioner has not had his individual facts and legal arguments heard. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *United Mine Workers*, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition"; under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time for the DTA direct actions to be litigated.

For the foregoing reasons, Petitioner respectfully requests that the Court deny the government's motion to dismiss.

Dated: May 3, 2007         Respectfully submitted,


    /s/ Shayana Kadidal

Shayana Kadidal [D.C. Bar No. 454248]
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6499

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SABAR LAL, *et al.*, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Civil Action No. 06-CV-1763 (CKK) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| *Respondents*. ) | |

**[PROPOSED] ORDER**

The Court having considered Petitioners' Motion for Stay-and-Abey Order,

IT IS HEREBY ORDERED that the Motion is granted; it is further

ORDERED that this action shall be stayed and held in abeyance pending Petitioner's exhaustion of those remedies, and the filing in the Supreme Court of a petition to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) ("*Boumediene I*") or the Supreme Court's resolution on the merits of the same jurisdictional issue as presented in a pending original habeas petition in *In re Ali*, No. 06-1194.

Dated: _____                    _____
                                          Hon. Colleen Kollar-Kotelly
                                          United States District Judge

## CERTIFICATE OF SERVICE

      I hereby certify that on May 3, 2007, I filed and served the foregoing Opposition To Respondents' Motion To Dismiss, Motion for a Stay-and-Abey Order, and Notice of Intent to File Petitions under the Detainee Treatment Act, together with the Proposed Order, by causing an original (bearing ECF signature only) and two copies to be delivered to the Privilege Review Team, with one such copy to be forwarded to the following:

>Peter D. Keisler, Assistant Attorney General
>Douglas N. Letter, Terrorism Litigation Counsel
>Civil Division, Room 7268
>U.S. Department of Justice
>950 Pennsylvania Ave., N.W.
>Washington, D.C. 20530-0001

                                   /s/
                              Shayana Kadidal